## McCURDY vs. McFARLAND.

1. There is no implied warranty of *good character* in the sale of a steer.

2. A vendor is not bound to disclose the *character* of a steer.

## ERROR to Cooper Circuit Court.

CHILTON, *for Plaintiff in error, insists :*

1st. The Circuit Court erred in refusing to permit said McCurdy to prove, on the trial, that said steer in controversy had been killed by reason of his mischievous habits in Speed's field—because a previous agreement and promise to keep said steer out of Speed's field had been proven to have been made by McFarland to McCurdy, at the time of said sale—and, therefore, any violation of said agreement and undertaking of McFarland, was a good defence to the recovery of the purchase money of said steer by McFarland from said McCurdy. See Revised Code 1845; 4th Pickering 275.

2d. The Court erred in giving the instructions asked by plaintiff in the Court below, because the same are irrelevant, and not supported by the evidence.

3d. The Court erred in refusing the first instruction asked by McCurdy, for the reasons given above, in relation to the rejection of proof. See authorities above.

4th. Before the money was paid, McCurdy had a right to refuse to receive said steer, when Scott disclosed to him the mischievous character of said steer, which had been theretofore suppressed by McFarland—hence the agreement to keep said steer out of Speed's field was a part of the sale, or a condition touching it, which, if broken by McFarland, would be a good defence to a suit for the purchase money of said steer. See 4th Pickering 275, as above.

HAYDEN, *for Defendant in Error, insists:*

1st. That from the evidence in the cause the plaintiff in error bound himself, by his contract, to pay to McFarland $20 for his steers, and that there is no evidence of facts or circumstances conducing to show that the obligation to do so, on the part of McCurdy, was not binding in law at the time of the contract, or that it has been fully discharged or satisfied by him at any time since.

2d. That the instructions asked by plaintiff were legal and properly given to the jury by the Court.

3d. That the instructions asked by defendant and refused by the Court, were properly refused by the Court, because, among other reasons, there was no evidence given in the cause to warrant the Court in giving the same, and because they required of the Court to usurp the place of the jury in deciding the facts of the case submitted to their decision.

4th. That the plaintiff in error cannot complain in this Court of the rejection of any evidence by the Circuit Court, which was offered by him to the jury, because he hath not, in his motion for a new trial, complained and assigned the same as a reason for demanding a new trial.

NAPTON, J., *delivered the opinion of the Court.*

McFarland, the defendant in error, sued the plaintiff in error, McCurdy, before a justice of the peace in Cooper county, for ten dollars, alleged to be due on account of a purchase of a yoke of steers. McFarland obtained a judgment for ten dollars before the justice, and subsequently in the Circuit Court, to which the case was taken by appeal, he also got a verdict and judgment.

The facts, as proven by a witness, who was called upon to witness the payment of ten dollars on this contract, were:—that upon this occasion, the witness observed that one of the steers was a very mischievous, or, as the witness expressed it, a very *"breachy"* steer, and that he would probably be in one Speed's field; that upon learning this, McCurdy expressed some dissatisfaction, whereupon McFarland said he would take care to keep him out of Speed's field; that thereupon, the ten dollars were paid. It appeared that the steer had a mischievous habit of breaking fences, and it was proposed to be proved, that the steer had been killed in Speed's enclosure, on account of his bad character. This evidence was, however, rejected. It appeared, also, that McFarland did not disclose to McCurdy this mischievous propensity of the steer.

The Court instructed the jury, first, "That if the jury find from the evidence that the plaintiff sold the steers in controversy for twenty dollars, and the same has not been paid, and that the defendant knew the character of the steer, and received him with such knowledge, they will find for the plaintiff;" and secondly, "that if the defendant purchased said steer, without any knowledge of any defects in it, and such defects came to his knowledge before bringing this suit, and that he failed to return or offer to return him, he was liable for the price of said steer."

The defendant asked the following instructions, which were refused: If the jury believe that the plaintiff sold to the defendant the steer in question, without disclosing to him the character of said steer, and the jury further find that said steer was unmanageable and mischievous, the defendant had a right to refuse to accept said steer, and if he did so refuse to accept him, and did afterwards accept him upon the condition that McFarland should keep him out of Speed's field, and that condition was not performed by McFarland, he is not liable for the price of said steer.

Exceptions were taken to the instructions given, and to the refusal of those asked for by the defendant, and the case brought here by writ of error.

The instructions, which the Circuit Court gave to the jury, as well as those which were refused, are based upon the assumption that in the sale of cattle there is an implied warranty of their freedom from all vicious propensities and mischievous habits. The same principle would hold the vendor of a slave responsible for his moral character as well as his physical soundness. The difficulty of fixing on a standard by which the moral character of either a slave or a steer could be determined, presents a very formidable objection to the adoption of any such doctrine, whether it is to be applied to the transfer of irresponsible animals, or of slaves. For this reason, it has been held that the vendor of a slave does not warrant his moral character. Smith vs. McCall, 1 McCord's Rep. 220. To one purchaser, a slave who was addicted to lying or stealing, or running away, might be entirely valueless, whilst another might regard these vicious propensities as not in the slightest degree impairing his value. So a steer, purchased by a butcher, might have a great many bad qualities, which would unfit him for the yoke, and yet be not the less acceptible to the purchaser. Even where cattle are purchased for the draught, it would depend very much upon the particular employment for which they were designed, whether a habit of breaking fences would constitute a serious objection to them. It must, therefore, depend upon a great many

considerations, foreign from the contract, to determine what habits shall be held to vitiate it, and what not. It is better that purchasers should be left to protect themselves by special warranties.

The instructions which the Court gave, were rather prejudicial to the plaintiff, but as he is not the party complaining in this Court, they will be no ground for reversing the judgment. The instructions which the defendant asked, seemed to be designed to place the case upon the ground of conditional contract, and a failure by the plaintiff to comply with the condition precedent. There was proof of a promise, by the plaintiff, to keep the steer complained of out of Speed's field, but this promise, it seems, was made after the completion of the original contract, and did not form any part of that contract. The instruction asked concedes that it did not, but assumes that this condition was engrafted into the contract previous to the actual acceptance of one of the steers, and that, therefore, a recovery could not be had without proving a compliance with this condition. The answer to this is, that a promise so made after the consummation of the contract, would be without consideration, and, therefore, not binding. The instruction moreover assumed that the vendor was bound to disclose the character of the steer, and for this reason alone was properly refused.

The other Judges concurring, the judgment is affirmed.